UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Case No. 8-16-74011-las |
| CHERIE ANN HLADY, | Chapter 7 |
|     Debtor. | |
| _____ | |
| CHERIE ANN HLADY, | |
|     Plaintiff, | |
| v. | Adv. No. 8-16-08181-las |
| KEY BANK, N.A., AMERICAN EDUCATION SERVICES, CITIBANK, N.A., CITIBANK STUDENT LOAN COMPANY, and NEW YORK STATE HIGHER EDUCATION SERVICES CORP., | Trial Dates: 10/2/17 and 11/15/17 |
|     Defendants. | |

**PLAINTIFF'S POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Cherie Ann Hlady ("Plaintiff"), by her undersigned counsel, respectfully submits her Post-Trial Proposed Findings of Fact and Conclusions of Law and states as follows:

## I.    FINDINGS OF FACT

**A. Stipulated Facts**

1. Plaintiff is an individual residing at 7 Dorothy Street, Hicksville, New York. (*Plaintiff and Defendant's Joint Stipulations of Fact and Agreed Statements of Law* ("Joint Stipulations"), p. 2, ¶5 [Docket No. 21]

2. Defendant Educational Credit Management Corporation ("ECMC") is a not-for-profit corporation duly organized under the laws of the State of Minnesota, with offices located at 111 South Washington Avenue, Suite 1400, Minneapolis, Minnesota. (Joint Stipulations, p.1, ¶ 1)
3. As of January 23, 2017, the outstanding balance of Plaintiff's student loan owed to ECMC was approximately $140,772.91. The loan accrues interest at rate of 6.88% per annum or $19.69 per diem. (Joint Stipulations p.2, ¶ 3)
4. Plaintiff obtained the ECMC Loan to finance her pursuit of a Juris Doctorate degree from Hofstra University, which she obtained in 2006. (Joint Stipulations, p. 2, ¶7)
5. Plaintiff also holds a Bachelor's degree in Speech from St. John's University. (Joint Stipulations, p. 2, ¶ 8)
6. Plaintiff is 48 years old. (Joint Stipulations, p. 2, ¶ 5)
7. Plaintiff is married and has no dependents. (Joint Stipulations, p. 2 ¶ 6)
8. Plaintiff is self-employed in her own law practice, Hlady Law Firm, P.C. where she handles estate planning and real estate matters (Joint Stipulations, p.2 ¶12).
9. Under the government sponsored income driven repayment programs, Plaintiff would be required to submit documentation regarding her income every year for the duration of the repayment period in order to remain eligible (Joint Stip, p. 3 ¶9)

B. **Plaintiff's Proposed Findings of Fact**
   i. **Plaintiff's Earning History**
      1. Upon graduating from law school, Plaintiff worked as an independent contractor for the law firm of Fratello & Fox in Woodbury, New York where she earned $25 per hour as a legal assistant. (October 2, 2017 trial transcript) ("October 2 Tran."), 8:2-13.)
      2. Plaintiff was not promoted after passing the NY bar exam. She continued to work for Fratello & Fox as a legal assistant earning $25

per hour, though she was expected to take on additional responsibilities (October 2 Tran, 8:9-13)

3. The work with Fratello & Fox was not consistent and Plaintiff was laid off and rehired repeatedly at whim (October 2 Tran, 9:1-12)
4. After being seriously injured in a car accident, Plaintiff was laid off from Fratello & Fox after working there for five (5) years. (October 2 Tran., 8:13, 9:12)
5. Plaintiff applied for and received deferments and forbearances because she had difficulty making payments on her student loans. (October 2 Tran. 11:17-15)
6. Plaintiff formed her own practice in 2011. (October 2 Tran. 11:1-2)
7. In 2016 Plaintiff's adjusted gross income was $321. (Trial Exhibit D).
8. In 2015 Plaintiff earned $12,784 in her business. (Trial Ex. E)
9. In 2014 Plaintiff earned $17,691 in her business (Trial Ex. F)
10. In 2013 Plaintiff had an adjusted gross income of $519 (Trial Ex. G)
11. In 2012 Plaintiff had an adjusted gross income of $5,478 (Trial Ex. H)

ii. **Plaintiff's Efforts to Find Employment**

12. Prior to forming her practice, Plaintiff hired a headhunter and sent out hundreds of resumes, handed out business cards and went on a few job interviews, but her job search was fruitless (Oct 2 Tran. 9:17-20)

iii. **Plaintiff's Financial Condition**

1. Shortly after her student loans became due, Plaintiff suffered a knee injury and needed surgery for which she incurred substantial medical debts. (October 2 Tran 12:11-17)
2. Plaintiff runs her practice out of her childhood home where she also resides. (October 2 Tran. 18:13-14)
3. Plaintiff does not own any real property (October 2 Tran 18:17-23)
4. In her bankruptcy schedules, Plaintiff listed assets with a total value of $18,963.06, consisting primarily of a 2011 Nissan Altima which she

valued at $9,868 and an IRA with Oppenheimer Funds valued at $3,183.33. (Bankr. Docket. 1, Schedule A/B.) Ms. Hlady listed debts of 162,773 including the ECMC Loan. (Bankr. Dkt.1, Schedule E/F).

5. In lieu of rent, Plaintiff is responsible for paying the property taxes on the home which costs $700 per month. (October 2 Tran., 24:15-21.)

6. The Bankruptcy Allowable Living Expense for mortgage or rent in Nassau county is $2,230. Plaintiff's expense falls far below the IRS Standard for housing.

7. Though Ms. Hlady is married, her husband lives in Colorado and does not contribute to her household expenses (October 2 Tran., 19:3-6, 23:2-4)

8. Plaintiff helps care for her parents who live nearby and cannot move to Colorado with her husband (Oct 2 Tran, 26:9-10)

iv. **Plaintiff's Physical Limitations**

9. Plaintiff suffered a knee injury that required surgery (Oct 2 Tran 12:13-14)

10. Plaintiff was seriously injured in a car accident in 2011 which left her with chronic issues that prevent her from working a physically demanding job. (October 2 Tran. 19:13-16)

## II. PROPOSED CONCLUSIONS OF LAW

A. **Agreed Statements of Law**

1. The applicable standard for determining whether Plaintiff is entitled to an undue hardship discharge of the student loan pursuant to 11 U.S.C. §523(a)(8) is stated under *Brunner vs. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) (*"Brunner"*). (Joint Stipulations, p. 3, ¶ 1)

2. The standard for undue hardship requires a showing: (1) that Plaintiff cannot maintain based on current income and expenses, a "minimal"

standard of living for herself and her dependents if she is forced to repay the ECMC Loan; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) that Plaintiff has made good faith efforts to repay the loan. *Brunner*, 831 F.2d at 396 (Joint Stipulations, p. 3, ¶2),

3. Plaintiff has the burden of proving each prong of the Brunner Test by a preponderance of the evidence. *In re Brightful*, 267 F.3d 324, 327 (3d Cir. 2001) (Joint Stipulations, p. 3, ¶ 3)

B. **Proposed Conclusions of Law**

   i. **Minimal Standard of Living**

4. In determining whether a debtor satisfies the first prong of the *Brunner* test, courts "examine current income and expenses and determine, through the application of common sense, a minimal standard of living level which is sensitive to the particular circumstances of each case." *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 317 (Bankr. S.D.N.Y. 2002) (citing *Elmore v. Mass. Higher Educ. Assistance Corp. (In re Elmore),* 230 B.R. 22, 26 Bankr. D. Conn. 1999)).

5. The first prong "does not require the debtor to live at or below the poverty level." *Id.* See also *Jackson v. The Educ. Res. Inst. (In re Jackson)* Adv. No. 06-01433, 2007 WL 2295585, at *5 (Bankr. SDNY Aug 9, 2007). In applying this prong, the Court considered whether the debtor's expenses are below the amounts the Internal Revenue Service considers reasonable and necessary in determining the monthly amount a taxpayer can access from earnings to pay delinquent taxes, as set forth in its *Housing and Allowable Living*

*Expenses* publication. *Jane Doe v. Educ. Credit Mgmt. Corp. (In re Doe)* 325, B.R. 69, 78 (Bankr. S.D.N.Y. 2005).

6. The IRS issues allowable expense amounts for debtors' necessary expenses including food, clothing, housing and utilities, vehicle and transportation costs and out-of-pocket health care costs. Plaintiff's current monthly expenses are below the amounts set forth in the IRS's collection financial standards.

7. A minimal standard of living should include shelter, basic utilities, food and personal hygiene products, clothing, means of transportation, life and health insurance or the ability to pay medical/dental expenses and modest recreation. *Ivory v. United States Dep't of Educ. (In re Ivory)*, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001); *Nary v. The Complete Source (In re Nary)* 253 B.R. 752, 763 (N.D. Tex 2000).

8. A minimal standard of living in modern American society includes… telephones to communicate, at least small amounts of life insurance or other financial savings for burials and other financial expenses… the ability to pay for some small diversion or source of recreation, even if it's just watching television". *Cf. McLaney*, 375 B.R. at 674–75; *Ivory v. United States (In re Ivory)*, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001)

9. Ms. Hlady's expenditures on telephone services, the internet and television are necessary under the circumstances to maintain a minimal standard of living. Furthermore, these services are necessary for her to run her practice.

10. Participation in an income-driven repayment program is not required to establish an undue hardship. *Educ. Credit Mgmt. Corp. v. Mosley (In re*

*Mosley)*, 494 F.3d 1320, 1327 (11th Cir. 2007); accord *Krieger v. Educ. Credit Mgmt. Corp. (In re Krieger)*, 713 F.3d 882, 884–85 (7th Cir. 2013); Barrett, 487 F.3d at 364; *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 402 (4th Cir. 2005); *Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 680 (6th Cir. 2005); *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1206 (10th Cir. 2005); *Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon)*, 435 B.R. 791, 803–04 (B.A.P. 1st Cir. 2010).

11. Borrowers only obtain a forgiveness of debt if they adhere rigorously to all requirements of an income-based program for its full twenty to twenty-five-year duration. Borrowers who default while in a program lose eligibility. 34 C.F.R. §§ 685.221(a)(2), 685.209(a)(ii), 682.215(a)(2).

12. Additionally, assuming Plaintiff is able to make the monthly "payments" of $0, interest would continue to accrue and negatively amortize until the end of the 25-year repayment term, resulting in an ending loan balance exceeding $383,000. This amount would then become taxable income once it was cancelled, at a time when Ms. Hlady would be 73 years old and living on social security income (assuming Social Security doesn't collapse before then). *See, e.g., Marshall v. Student Loan Corp. (In re Marshall)*, 430 B.R. 809, 814–15 (Bankr. S.D. Ohio 2010) (citing *Larson v. United States ex rel. Dep't of Educ. (In re Larson)*, 426 B.R. 782, 794 (Bankr. N.D. Ill. 2010); *Durrani v. Educ. Credit Mgmt. Corp. (In re Durrani)*, 311 B.R. 496, 507–08 (Bankr. N.D. Ill. 2004); and *Barrett*, 487 F.3d at 364 (6th Cir. 2007)); *Durrani*, 311 B.R. at 506–07 ("The fact that a debtor can afford the monthly ICRP payment is not dispositive as to whether she can

maintain a minimal standard of living while repaying her student loan."); *see also, e.g.*, *Abney v. Dep't of Educ. (In re Abney)*, 540 B.R. 681, 689–90 (Bankr. W.D. Mo. 2015) (explaining the adverse tax consequences of an ICRP where the accrual of interest will outpace the monthly repayments resulting in a negative amortization).

13. In *Marshall*, ECMC argued that the plaintiff-debtor could maintain a minimum standard of living while repaying the loan because the debtor would be eligible for an ICRP and would have a $0 monthly ICRP payment. *Marshall*, 430 B.R. at 814–15. The *Marshall* court reasoned that even if the debtor were eligible and had to pay only $0 a month under an ICRP, she still could not maintain a minimum standard of living because of, *inter alia*, the length of the 25-year repayment period, at which end the debtor would be well into retirement and likely living off a fixed income, and the potentially "devastating" tax consequences at the end of the repayment period. *Id.* at 815. Similarly, in *Durrani*, the bankruptcy court found that: (1) the debtor could not maintain a minimal standard of living even with a hypothetical ICRP payment of $0 per month; and (2) even if the debtor could afford the monthly ICRP payment, she still could not maintain a minimal standard of living with an ICRP due to, *inter alia*, the negative amortization of the loan under the ICRP, the length of the ICRP repayment period, and the severe adverse tax consequences of the ICRP. *Durrani*, 311 B.R. at 506–08.

 ii. **Additional Circumstances**

14. Under the second *Brunner* prong, the debtor must show that additional circumstances exist so that the debtor's present "state of

affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396

15. The additional circumstances that indicate that Ms. Hlady's present situation will likely persist for a significant portion of the repayment period are the lack of prospects for employment or increase in salary
16. Plaintiff's circumstances are not reasonably likely to change in the near future. Plaintiff is approaching 50 years of age, her work experience is limited to her work as a legal assistant and working for herself in her own practice.
17. Plaintiff attempted to find work prior to starting her own practice by hiring a headhunter and sending out hundreds of resumes to no avail.
18. Plaintiff suffered severe injuries in a 2011 car crash that prevent her from working any position other than a desk job

### iii. Good Faith

1. Plaintiff has made good faith efforts to repay the loan. Courts have held that being too poor to make payments is not bad faith. *In re Mosley* 494 F.3d 1320 (11th Cir. 2007).
2. Since completing her studies, debtor has barely earned enough income to cover her necessary living expenses, even without the student loan payment. Debtor remained in communication with the loan servicer through the years to explain her financial situation and request deferments and forbearances.
3. Plaintiff has made payments of approximately $5,000 toward the ECMC Loan (Oct 2 Tran., 20:13-14).
4. Good faith consists of efforts to obtain employment, maximize income and minimize expenses. *Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 324 (4th Cir.2008) (quoting *O'Hearn v. Educ. Credit Mgmt.*

*Corp. (In re O'Hearn)*, 339 F.3d 559, 564 (7th Cir.2003). Here, Plaintiff has sent out hundreds of applications seeking better paying employment with no success. Plaintiff has taken reasonable steps to reduce her expenses and maximize her financial resources. She lives in her mother's house and runs her law practice from the home to save money. She has no assets, save for a 7-year old car and modest retirement plan.

5. In sum, Plaintiff's various efforts to minimize expenses, maximize income, and satisfy her student loan obligations demonstrate her good faith effort to repay her debt. Accordingly, she has met her burden of proving the third element of the *Brunner* test.

## CONCLUSION

Ms. Hlady owes over $140,772 in student loans. The record shows that despite her good faith efforts to repay this debt, Ms. Hlady cannot now, and will not in the future, be able to repay this debt while maintaining a minimum standard of living for herself. Based upon her circumstances, she cannot maintain even a minimal standard of living if she is required to repay the loans. Plaintiff carried her burden of showing that repaying her student loans would impose an undue hardship, and judgment will be entered discharging her student loans.

Dated: Uniondale, New York
June 29, 2018

        Respectfully Submitted,

        LAW OFFICE OF NATALIE JEAN-BAPTISTE, P.C.

        By:    */s/ Natalie Jean-Baptiste*
                  Natalie Jean-Baptiste, Esq.

                  626 RXR Plaza, 6th Floor
                  Uniondale, NY 11556
                  (516) 522-2503 Telephone
                  (516) 706-8323 Facsimile
                  natalie.jeanbaptiste@gmail.com

                  *Attorney for Plaintiff*